UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Graciana Manalo and Felipe Manalo,** | Civil No. 07-4557 (JMR / SRN) |
| **Plaintiffs,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Wyeth, et al.,** | |
| **Defendants.** | |

| | |
|---|---|
| **Carol J. Hess,** | Civil No. 07-4567 (JMR / SRN) |
| **Plaintiff,** | |
| v. | **REPORT AND RECOMMENDATION** |
| **Wyeth, Inc.,** | |
| **Defendant.** | |

Kenneth B. Fromson, Finkelstein & Partners, LLP, 436 Robinson Ave., Newburgh, NY 12550; and Gale D. Pearson, Pearson, Randall & Schumacher, P.A., Suite 1025, Fifth Street Towers, 100 South Fifth Street, Minneapolis, MN, 55402, for Plaintiffs Manalo.

Robert K. Jenner, Janet, Jenner & Suggs, LLC, 1829 Reisterstown Road, Suite 320, Baltimore, MD 21208; and Wilbur W. Fluegel, Fluegel Law Office, Suite 3475, 150 South Fifth Street, Minneapolis, MN, 55402 for Plaintiff Hess.

Edward F. Fox and Carrie L. Hund, Bassford Remele, A Professional Association, 33 South Sixth Street, Suite 3800, Minneapolis, MN, 55402, for Defendants.

SUSAN RICHARD NELSON, United States Magistrate Judge

These related matters come before the undersigned United States Magistrate Judge on Defendants' Motion To Dismiss (Doc. No. 9) and Plaintiffs' Motion to Stay (Doc. No. 24) in the Manalo action and on Defendant's Motion To Dismiss (Doc. No. 6) in the Hess action. They have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. §

636 and District of Minnesota Local Rule 72.1(a). For the reasons stated below, the Court recommends that the actions be stayed pending the outcome of the appellate proceedings in the Pennsylvania state courts.

## I.     FACTUAL AND PROCEDURAL HISTORY

In 2004, Plaintiffs Graciana Manalo and Felipe Manalo filed a products liability action against Defendants Wyeth, Wyeth Pharmaceuticals Inc., Wyeth-Ayerst Pharmaceuticals Inc., Wyeth-Ayerst International Inc., Wyeth Laboratories Inc. (collectively "Wyeth") as well as other pharmaceutical companies, in Pennsylvania state court, where it was consolidated with numerous other actions against the same defendants regarding their hormone replacement therapy products.

In one of those actions, Coleman v. Wyeth, the Pennsylvania state court ruled in September 2007 that Pennsylvania's two-year statute of limitations applied and thus barred that plaintiff's claim. Based on that ruling, Wyeth then notified Plaintiffs in the present actions that it would move for summary judgment in their Pennsylvania actions on the same grounds. On November 8, 2007, the Manalo Plaintiffs then filed a *praecipe* for discontinuance without prejudice of their Pennsylvania action. That same day, they filed the present action here in Minnesota federal court. (Doc. No. 1, No. 07-CV-4557.)

Wyeth now moves to dismiss or stay this action based on Colorado River "abstention," claiming that this Court should dismiss (or at least stay) this action in deference to the Pennsylvania state court action. (Doc. No. 9.) Plaintiffs counter by moving to stay pretrial proceedings in their action here pending the transfer of it to the Multi-District Litigation proceedings pending before the federal district court in the Eastern District of Arkansas. (Doc. No. 24.)

After Wyeth filed its motion to dismiss or stay this action, the Pennsylvania state court, on December 7, 2007, struck Plaintiffs' *praecipe* of discontinuance and, on January 4, 2008, granted Wyeth summary judgment based on the expiration of Pennsylvania's two-year statute of limitations. With respect to the action brought by Plaintiff Carol Hess in Pennsylvania, an essentially similar procedural posture unfolded.[1] In sum, a judgment of dismissal based on the Pennsylvania statute of limitations has now been entered in each of the actions in Pennsylvania state court and those decisions are on appeal.

## II. DISCUSSION

In each case, Defendants have moved for dismissal (or in the alternative at least a stay) based on  Colorado River Water Conversation District v. United States, 424 US. 800 (1976), which permits a federal court to dismiss or stay an action under certain limited circumstances where a similar action is pending in state court. Plaintiffs of course oppose dismissal, but are amenable to a stay. (No. 07-CV-4557, Mem. at 11-12; No. 07-CV-4567, Mem. at 8 ("Plaintiff Hess respectfully opposes the motion for dismissal and requests the stay of the Minnesota action pending the disposition of the issues raised in her appeal in Pennsylvania.").)

### A. Colorado River "Abstention"

The authority of a federal court to stay or dismiss an action out of deference to a parallel action in state court is discretionary and appropriate only in "exceptional circumstances." Moses

---

[1] Carol Hess filed her action in Pennsylvania state court in June 2004. On November 9, 2007, she filed a *praecipe* for discontinuance of that action. But on December 5, 2007, the Pennsylvania court granted Wyeth's petition to "strike off" that discontinuance and then on January 9, 2008, granted Wyeth's motion for summary judgment based on the application to Hess's action of the Coleman statute-of-limitations decision. Hess filed a notice of appeal on February 8, 2008. In the interim, Hess had filed her action here in Minnesota federal court on November 8, 2007. The Hess and Manalo actions were designated as "related cases" to proceed before the same District Judge and Magistrate Judge. (Doc. No. 40, No. 07-CV-4557; Doc. No. 12, No. 07-CV-4567.)

H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983).[2]  The task of federal courts "is not to find some substantial reason for the *exercise* of federal jurisdiction . . .; rather, the task is to ascertain whether there exist "'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the *surrender* of that jurisdiction." Id. at 25 (emphases in original).

     The issue of Colorado River abstention arises usually (if not always) where the state and federal district court proceedings are pending simultaneously.  Here, as noted above, the Pennsylvania court has applied its statute of limitations ruling to both of the Plaintiffs' actions venued in that state and granted the Defendants summary judgment on that basis.  In other words, there is a final judgment in those two state-court actions.  But while Plaintiffs thus argue that "there is currently no parallel state court proceeding" (No. 07-CV-4557, Mem. at 3), and Defendants contend that the appeal counts as such proceedings (No. 07-CV-4557, Reply Mem. at 3), neither side supports its argument with any clear authority on the impact of an appeal.

     The lack of authority on this point is probably due to the fact that once an action proceeds to a final judgment, preclusion doctrines would usually take precedence over any Colorado River issue.  But Defendants do not directly press any argument here based on *res judicata* and that issue has not been fully briefed by the parties.[3]  The Court thus clarifies that it is not currently addressing any such preclusion argument under the Full Faith and Credit statute, 28 U.S.C. § 1738, which provides in relevant part that judgments of any State "shall have the same full faith

---

   [2] In Colorado River, the Court first explained that the doctrine it announced was not a true abstention doctrine.  96 U.S. at 814-17.

   [3] Again, while Plaintiffs assert that a dismissal on limitations grounds cannot support preclusion (No. 07-CV-4557, Mem. at 10), and Defendants argue that such a dismissal is entitled to *res judicata* (No. 07-CV-4567, Reply Mem. at 14-15), neither party cites any controlling authority on the precise issue.  See infra note 4.

and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."[4]

---

[4] Thus the general rule is that the second forum is bound to apply the preclusion law of the first forum, here that of Pennsylvania. Richman & Reynolds, Understanding Conflict of Laws § 110(c) (3d ed. 2002). The existence of the appeals in Pennsylvania does not undermine "finality" so as to preclude *res judicata*. Shaffer v. Smith, 673 A.2d 872, 874-75 (Pa. 1996) (expressly overruling line of authority that had held that judgment "is not considered a final judgment for purposes of *res judicata* or collateral estoppel while an appeal is pending"). This is consistent with the federal rule. 18A Wright et al., Federal Practice and Procedure § 4432 (2d ed. 2002) (noting "the rule that preclusion is not defeated by the pendency of an appeal"), § 4433 ("It is likewise held in federal courts that the preclusive effects of a lower court judgment cannot be suspended simply by taking an appeal that remains undecided."). Moreover, the Minnesota Court of Appeals has ruled that if the judgment of another state precluded an action based on that state's applicable limitations period, a Minnesota state court must give that other state's judgment preclusive effect in an action filed in Minnesota, at least where the parties were not Minnesota residents and the cause of action accrued elsewhere. Sautter v. Interstate Power Co., 567 N.W.2d 755, 761 (Minn. App. 1997), pet. for rev. denied, (Minn. Oct. 31, 1997). The Eighth Circuit came to the same conclusion with respect to a diversity action filed in Minnesota federal court following a judgment adverse to the plaintiff on limitations grounds in a prior action in Louisiana federal court. Austin v. Super Valu Stores, Inc., 31 F.3d 615, 620 (8th Cir. 1994) (concluding that because Louisiana state law of *res judicata* would preclude a second action on the same claim, a court of another state, including a federal district court sitting in diversity, was bound to apply that law to an action filed in that forum). In addition, the federal rule is that "the rules of finality, both statutory and judge made, treat a dismissal on statute-of-limitations grounds the same way they treat a dismissal for failure to state a claim, for failure to prove substantive liability, or for failure to prosecute: as a judgment on the merits." Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 228 (1995) (ruling in a securities fraud case under federal law). Courts have increasingly recognized that some decisions on issues beyond the merits–including dismissals on limitations grounds–should be accorded preclusive effect. See Semtek Int'l Inc. v. Lockheed Martin Corp., 531 U.S. 497, 502 (2001) ("[O]ver the years the meaning of the term 'judgment on the merits' 'has gradually undergone change,' and it has come to be applied to some judgments (such as the one here) that do *not* pass upon the substantive merits of a claim and hence do *not* (in many jurisdictions) entail claim-preclusive effect."). In light of the potential confusion regarding the traditional usage of "on the merits" in this context, the Restatement has abandoned that terminology. Restatement (Second) Judgments, § 19 cmt. a (noting that "[i]ncreasingly . . . judgments not passing directly on the substance of the claim have come to operate as a bar"). But this Court is unaware of any published Pennsylvania appellate decision holding that a limitations dismissal is a judgment "on the merits" for purposes of *res judicata*. But cf. Donahue v. Gavin, 1999 WL 1657000, *2 n.3 (E.D. Pa. March 12, 1999) (ruling–although with respect to federal Section 1983 civil rights claims, which, however, are subject to the state-law limitations period–that a limitations dismissal is subject to *res judicata*).

As noted above, the authority of a federal court to stay or dismiss an action out of deference to a parallel action in state court is discretionary and appropriate only in "exceptional circumstances." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19 (1983). The task of federal courts "is not to find some substantial reason for the *exercise* of federal jurisdiction . . .; rather, the task is to ascertain whether there exist "'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the *surrender* of that jurisdiction." Id. at 25 (emphases in original).

As the Supreme Court clarified, "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention." Colorado River, 424 U.S. at 818. "[W]hether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem. Hosp., 460 U.S. at 16.

Clarifying that the question of whether to dismiss or stay under Colorado River does not present a true abstention issue–which entails "considerations of proper constitutional adjudication and regard for federal-state relations"–the Supreme Court has identified certain non-exclusive factors relevant to this issue. As summarized by the Eighth Circuit, the factors include: (1) whether there is a *res* over which one court has established jurisdiction, (2) the inconvenience of the federal forum, (3) whether maintaining separate actions may result in piecemeal litigation, unless the relevant law would require piecemeal litigation and the federal court issue is easily severed, (4) which case has priority–not necessarily which case was filed first but a greater emphasis on the relative progress made in the cases, (5) whether state or

federal law controls, especially favoring the exercise of jurisdiction where federal law controls, and (6) the adequacy of the state forum to protect the federal plaintiff's rights.  United States Fidelity and Guaranty Co. v. Murphy Oil USA, Inc., 21 F.3d 259, 263 (8th Cir. 1994).

With respect to the Colorado River factors as recognized in this Circuit, it appears that (1) there is no *res* at issue that could weigh in favor of deference to the state-court proceedings; (2) the federal forum here in Minnesota is probably not truly inconvenient (as Plaintiffs have chosen it and Defendants are large national corporations that presumably can litigate anywhere in the United States without genuine inconvenience); and (3) proceeding here would not result in piecemeal litigation insofar as the Pennsylvania state court actions have already proceeded to final judgments (now on appeal), although this would not preclude the risk of inconsistent judgments.  Defendants trumpet the threat of "piecemeal litigation" if these actions are not dismissed.  (No. 07-CV-4567, Mem. at 8.)  But the mere threat of piecemeal litigation resulting from concurrent state and federal proceedings cannot alone warrant dismissal, because the Supreme Court in Colorado River made clear that

> [g]enerally, as between state and federal courts, the rule is that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction . . . ."

424 U.S. at 817 (quoting McClellan v. Carland, 217 U.S. 268, 282 (1910)) (emphasis added).

But on the other hand, (4) the Pennsylvania actions clearly win the priority battle, not just because Plaintiffs filed first in Pennsylvania, but because their actions have now proceeded to final judgments, whereas the actions recently filed here have not proceeded beyond the current motions to dismiss; (5) there is no issue of federal law as these product liability actions are

premised on diversity;[5] and (6) the Pennsylvania state courts would appear adequate to protect the Plaintiffs' rights (even though the Manalo Plaintiffs now claim to have "lost faith" in the judge that issued the limitations ruling and Hess likewise claims to have "lost confidence" in that judge). The Court notes that even if it could apply a mechanical balancing test that accorded each factor the same weight regardless of the particular facts of these cases–an approach the Supreme Court has expressly rejected, Moses H. Cone Mem. Hosp., 460 U.S. at 16 (noting that the decision "does not rest on a mechanical checklist" and that the weight of individual factors "may vary greatly from case to case")–such a three-to-three tie would not dictate dismissal in light of the Supreme Court's guidance that only "'exceptional' circumstances, the 'clearest of justifications,'" can suffice to justify a federal court's surrender of jurisdiction. Id. at 25.

Defendants further assert that this Court should also consider, as they claim many other courts do, an additional factor–that is, whether Plaintiffs are "forum-shopping" to take advantage of Minnesota's six-year limitations period. (No. 07-CV-4567, Mem. at 6 n.2, 11; No. 07-CV-4557, Mem. at 8, 13.) But there is nothing inherently wrong with a plaintiff seeking out its best options in terms of various jurisdictions. As the Minnesota Supreme Court has clarified, the Minnesota courts are open to all, not just Minnesota residents, as long as jurisdiction can be established. Schwartz v. Consolidated Freightways Corp. of Del., 221 N.W.2d 665, 669 (Minn. 1974) ("Suffice it to say that the courts of this state are open to those residents and nonresidents alike who properly invoke, within constitutional limitations, the jurisdiction of these courts.").

Moreover, an accusation of forum-shopping usually misses the mark because there would

---

[5] The Court notes, however, that the fact that the underlying issues are governed by state law does not necessarily weigh in favor of a stay or dismissal. Moses H. Cone Mem. Hosp., 460 U.S. at 25 ("Although in some rare circumstances the presence of state-law issues may weigh in favor of [deferring to the state court], the presence of federal-law issues must always be a major consideration weighing against surrender.").

still be the question of choice of law, which is the preferred doctrine for dealing with situations like this rather than simply denying jurisdiction or venue.  Minnesota does not reflexively apply its law, either substantive and procedural, to every action brought in its courts.  Rather, it employs Professor Leflar's flexible, policy-driven approach to choice-of-law questions.  Jepson v. General Cas. Co. of Wis., 513 N.W.2d 467, 470 (Minn. 1994).  Thus the fact that an action would be filed here hardly permits a plaintiff to have chosen the applicable law.[6]

Defendants also assert that this Court could not constitutionally apply the Minnesota statute of limitations here because these actions have few, if any, connections with this state.  (No. 07-CV-4567, Mem. at 4 n.2; Reply Mem. at 3.)  Granted, any state's application of its choice-of-law system is subject to constitutional restraints.  Allstate v. Hague, 449 U.S. 302 (1981).  Here, it appears that none of the Plaintiffs live or work in Minnesota, their causes of action did not arise here (they presumably were prescribed and consumed the medications at issue in their home states) and Defendants (at least the main Wyeth entities) are neither incorporated nor headquartered here.

But as the Supreme Court has made clear, the Constitution does not prohibit a state from applying its own "statute of limitations to claims that in their substance are and must be governed by the law of a different State."  Sun Oil v. Wortman, 486 U.S. 717, 722, 727 (1988)

---

[6] With respect to the issue of choice of law regarding the appropriate statute of limitations, although some Minnesota decisions state that Minnesota courts always apply Minnesota's procedural law, other decisions conclude that the better view is that the regular choice-of-law analysis should be applied to any issue, substantive or procedural.  Danielson v. National Supply, 670 N.W.2d 1 (Minn. App. 2003) (Minge, Judge) (noting substance vs. procedure distinction but concluding that in light of increasing trend to recognize such statutes as outcome determinative such that it would be "inappropriate to use the procedural classification," the issue "should be decided the same as substantive law conflicts generally"), pet. for rev. denied (Minn. Dec. 16, 2003).  But see Commandeur LLC v. Howard Hartry, Inc., 2007 WL 4564186 (Minn. App. Dec. 21, 2007) (2-1; with Minge, Judge, dissenting) (reverting to mechanical substance vs. procedure distinction for statutes of limitation).

("[W]e do not hold that Kansas must apply its own statute of limitations to a claim governed in its substance by another State's law, but only that it may.").[7]  In short, this Court potentially could apply the Minnesota six-year statute of limitations.  Cf. Glover v. Merck & Co, Inc., 345 F. Supp. 2d 994, 997-99 (D. Minn. 2004) (applying Minnesota's statute of limitation because forum applies its own procedural law to product liability action, a result which was constitutional even though plaintiff "is an Illinois resident and ingested Vioxx while living in Illinois" because Minnesota had sufficient nexus where defendant "sold its products, and specifically, Vioxx, in Minnesota, and did business in Minnesota").[8]

Nevertheless, this Court need not consider any such issues in terms of an additional factor under the Colorado River analysis because it concludes–on these particular facts–that based on a balancing of the six recognized factors, these somewhat unusual circumstances present an appropriate context for a stay of the proceedings pending the outcome of the appeals in the Pennsylvania state-court system.[9]  It makes little sense to permit these federal actions to proceed while a dispositive ruling is on appeal in Pennsylvania.

If those dismissals would be reversed, it appears that Plaintiffs generally would not be prohibited from proceeding in Pennsylvania under Pennsylvania's statute of limitations.  But here Plaintiffs filed in Pennsylvania what appears to be the equivalent of a voluntary dismissal of their actions (a *praecipe* of discontinuance) before the Pennsylvania state court applied its

---

[7] Defendants' argument that Minnesota law could not constitutionally apply here, while extensive (Mem. at 11-13), ignores Sun Oil v. Wortman, 486 U.S. 717 (1988).

[8] The Court clarifies that it is, of course, not prejudging that issue, which is not before it.

[9] The Court notes, however, that it is in no position to question or second-guess–despite Plaintiffs' invitation to do so–the soundness of the merits of the limitations rulings presently on appeal in Pennsylvania.

Coleman statute-of-limitations ruling to their cases. The appeals of the Pennsylvania judgments, although apparently centered on the dismissal rulings, could also encompass the Pennsylvania court's denial of the Plaintiffs' voluntary dismissal of their actions (insofar as all such interlocutory decisions merge into the judgment for purposes of an appeal), such that a reversal of those judgments would mean that Plaintiffs' Pennsylvania actions would be terminated in favor of their present federal actions, thereby eliminating any risk of inconsistent or piecemeal rulings.

The Court declines to dismiss these actions, however, because if the Pennsylvania dismissals are reversed on appeal, even the six-year Minnesota statute of limitations will likely have run by the time any such appellate decision is issued, leaving Plaintiffs with no discernible venue. And in terms of Colorado River, "[o]nly the clearest of justifications will warrant dismissal." 424 U.S. at 819. Although the decision to dismiss rests "on a careful balancing of the important factors as they apply in a given case," that balancing is "heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem. Hosp., 460 U.S. at 16.

> **B.  Manalo Plaintiffs' Motion for Stay Pending Transfer to Federal MDL**

After these two cases were briefed and argued, the United States Judicial Panel on Multidistrict Litigation ruled that the "transfer of these two actions to the Eastern District of Arkansas would not necessarily serve the convenience of the parties and witnesses or promote the just and efficient conduct of this litigation at the present time." (No. 07-CV-4557, Doc. No. 41; No. 07-CV-4567, Doc. No.24.) Accordingly, it vacated its prior orders "conditionally transferring *Hess* and *Manalo* to the Eastern District of Arkansas for inclusion in MDL No. 1507." (Id.) In light of this recent ruling, the motion of the Manalo Plaintiffs to stay this action

pending its transfer to that MDL should be denied.[10]

### III.   CONCLUSIONS

In sum, the current proceedings present an unusual context for consideration of the Colorado River doctrine. The fact that the Pennsylvania actions have proceeded to a final judgment raises the question of *res judicata*, which, however, this Court is not addressing in light of the fact that Defendants' motions are based solely on Colorado River and, in any event, there remains the unanswered question of whether Pennsylvania views a dismissal on limitations grounds as a judgment on the merits for purposes of *res judicata*.

In terms of the Colorado River analysis, these cases hardly present the "clearest justifications" for a federal court to surrender its "virtually unflagging" obligation to exercise its jurisdiction. Cf. Colorado River, 424 U.S. at 819-20 (upholding dismissal where, in addition to other factors, a federal statute evinced a "clear federal policy" of "the avoidance of piecemeal adjudication of water rights in a river system," a policy which was "akin to that underlying the rule requiring that jurisdiction be yielded to the court first acquiring control of property"). Furthermore, while dismissal runs the risk of an unacceptable result if the Pennsylvania decisions are reversed, a stay pending the resolution of the Pennsylvania appeals nevertheless seems appropriate. Finally, as a practical matter, Plaintiffs do not oppose a stay pending the appeal. And Defendants' requested relief includes (although admittedly as their second choice), precisely such a stay. (No. 07-CV-4557, Mem. at 1, 14; No. 07-CV-4567, Mem. at 16.)

---

[10] Although Hess did not expressly move for a similar stay pending transfer to the MDL, she also requests (in opposing Wyeth's motion to dismiss), that this Court "stay all proceedings in this action pending transfer to the Prempro MDL." (No. 07-CV-4567, Mem. at 7 n.9.) In fact, her opening argument in her opposition is precisely for such a stay. (Id. at 8-10.)

**IV.     RECOMMENDATIONS**

Based on the foregoing, and all the files, records and proceedings herein, IT IS HEREBY RECOMMENDED that:

1.      Defendants' motions to stay (Doc. No. 9, No. 07–CV-4557) and (Doc. No 6, No. 07–CV-4567) be GRANTED IN PART (insofar as they seek stays of their respective actions) and DENIED IN PART (insofar as they seek dismissals of their respective actions); and

2.      Manalo Plaintiffs' motion to stay pending a MDL transfer (Doc. No. 24, No. 07–CV-4557) be DENIED.


Dated:  April 21, 2008

　　　　　　　　　　　　　　　　　　　　　　　　  s/ Susan Richard Nelson

　　　　　　　　　　　　　　　　　　　　　　　　SUSAN RICHARD NELSON
　　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge


Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by May 6, 2008, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.